## Thrasher & Gunther v. Emke.

(Decided September 23, 1913).

Appeal from Kenton Circuit Court
(Criminal Common Law and Equity Division).

1. Master and Servant—Injury to Servant by Explosion.—In an action by a servant against the master for injuries received by the explosion of a metal cap while at work receiving and disposing of refuse and debris from a tunnel, the master knowing the refuse was likely to have in it one or more caps or exploders, a thing inherently dangerous, it was his duty to warn the servant of the danger, and this is true even if the master was not responsible for the presence of the caps, and by the exercise of utmost care could not have kept them out. Appellee testified that he did. not know of the presence of the cap, or of the probability that it would be hauled out with the muck, and that he had never been warned of such danger. He had only been at work a short time,

his story is not unreasonable and the jury had a right to believe him. While there was a conflict upon this point, there is no ground for appellant's request for a peremptory instruction.

2. Master and Servant—Injury to Servant by Explosion—Instructions—Negligence.—It is sufficient if the employers knew, or by the exercise of ordinary care could have known, of the danger of caps or exploders getting into the refuse, and negligently failed to keep them out, or if the servant was ignorant of the danger, and by the exercise of ordinary care could not have discovered it, and appellants failed to warn him. The contention that the court in its instructions failed to require the jury, as a prerequisite for finding for plaintiff, to believe he knew, or could by the exercise of ordinary care have known of the presence of the explosion is not the question here.

3. Master and Servant—Negligence—Instructions.—The question of appellants' negligence in permitting the caps to be in the muck, and of appellee's knowledge of the danger were fairly submitted to the jury.

WALTER S. ROBERTS, ROBERT C. SIMMONS for appellant.

B. F. GRAZIANI for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

Appellee, Emke, recovered a verdict for $1,000 against appellants for the loss of an eye and other minor injuries caused by the explosion of a metal cap or dynamite exploder inadvertently placed by him on a fire which was burning on a dumping ground or fill where appellee was working for appellants.

Appellants were contractors engaged in widening a railroad tunnel in the city of Covington, and had been carrying on this work for more than a year prior to the time Emke was injured. In order to loosen the slate and rock forming the side of the tunnel, blasting was necessary. Holes to the number of eight or a dozen were drilled in the wall, and after being charged with dynamite were fired simultaneously by connecting with an electric battery or current. These exploders are made and used for the special purpose of firing blasts with electricity. The exploder consists of two insulated threadlike copper wires from four to ten feet long, the length depending upon the depth of the drill hole in which it is to be used; one end of these wires hangs out the end of the drill hole, and is connected with the main electric wire; the other end is sealed into a small copper cylinder, about an inch and one-half long, and as big around as a lead pencil. This copper cylinder contains

a very high power explosive, and of sufficient strength to explode the dynamite charge in which it is inserted at the bottom of the drill hole. From its very nature it is a highly dangerous thing, and for safety it must be handled understandingly. When the holes are drilled in the rock a workman loads them with a stick or sticks of dynamite, in one of which the cylinder end of the exploder is inserted. When the workmen are at safe distance, all the holes are fired at once from the battery.

The appellee, Emke, was in the employ of appellants, and had been for ten or fifteen days before the accident. His place of work was on the dump pile where the rock and refuse from the tunnel were hauled by the teamsters as the work progressed. This material is called "muck" by the witnesses. He alternated with another workman, Doherty, in day and night shifts on this dump. His duty was to use a shovel in leveling off the piles of muck hauled from the tunnel by the wagons, and to keep it in shape for those that followed. At the time Emke commenced work with appellants it was cold weather, and a fire was kept burning near the edge of the dump, and by which the dumpmen were protected from the cold. This fire had been there day and night for weeks before he began work, and continued until the accident, at least. The fire was kept alive by Emke and Doherty, and for this purpose they used wood, wedges, and other inflammable material brought to the dump from the tunnel along with the muck hauled by the wagons. Emke alleges and swears that he was told by his superiors to do this, and that it was a part of his duty. At all events both Emke and Doherty were so burning this material with the knowledge and consent of their superiors, and it is also admitted that these superiors directed that the trees in the way of the dump pile, as it formed, should be cut and burned, and they were burned at this fire.

On the day mentioned, a dynamite cap or exploder got into the fire. Emke claims that shortly after he began work on this morning he was gathering up with his shovel imflammable material and throwing it on the fire. There was a cap in it, but Emke says he only saw and knew of it as it left his shovel. The cap immediatey exploded and inflicted the injuries named. He states that he did not know of the presence of the cap, or of the probability that any would be hauled out to him with the muck, and that he had never been warned by any one of such a danger.

That this exploder came out of the tunnel with the muck is not disputed. How or why it should get in there is a question. It is not pretended that Emke was responsible for its presence. The appellants insist that they are not responsible because the utmost amount of care they were able to exercise could not keep these caps from being carried out with the muck sometimes. And to this end they offer proof to explain that occasionally a part of the blasts connected with the battery would not go off; that in such cases they would reconnect the missed holes, and if that failed to fire an employee would take out of the drilled hole the cap and dynamite, that is, unload the hole and charge it with another cap and dynamite. But if that employee left in the tunnel, to get mixed with the rock from the shots, this cap taken from the hole, he was guilty of negligence for which the employer should answer. Appellants also explain that certain sections of the wall drilled might fall before the cap and dynamite charge in it were exploded, and that this might occur from concussion of the other shots connected with the battery at the same time, and in this way unexploded caps might get in the muck. Now this might occur if it be supposed that appellants were going to the expense of drilling and blasting rock already so loose that it would fall by picking or of its own weight, or if it could be supposed that there was a moments difference between the time of shots fired simultaneously, that is, divide the time of an electric shock into periods. However, the most likely source of caps in the muck is not mentioned. The carelessness of the loader, carrying with him into the tunnel a bundle or box of them, laying them down as he takes out one at each hole to load it, will, in all probability, account for most of the live caps going out with the muck. That this thing of live caps going out with the muck was a likely occurrence, and a grave danger is admitted by appellant Thrasher and his foremen Jones and Hudson.

But it does not matter so much in just what manner they would get in the muck. Here we have an employee receiving and disposing of all the refuse and debris from the tunnel. Some of it he threw over the dump, and some of it he burned. This refuse and debris was likely to have in it one or more of these caps or exploders—a thing inherently dangerous, whether thrown over the dump or burned in the fire. His employers knew of this dangerous probability, and they owed to the employee on

the dump a duty—the duty of warning him of it, and this is true even if they were not responsible for their presence, and by the exercise of utmost care could not have kept them out.

Appellants say that Emke knew of this danger, and that they warned him of it. Emke denies it, and says he knew nothing of such a danger. Considering the short period of his employment, and the fact that his work had nothing to do with explosives, or the tunnel excavation, his story is not an unreasonable one, and the jury had a right to believe him. Anyhow, there was a conflict in the evidence on this point, and there is, therefore, no ground for appellant's request for a peremptory instruction.

Appellant's other complaint is that the court in its instructions failed to require the jury, as a prerequisite to finding for Emke, to believe that appellant knew, or by the exercise of ordinary care could have known of the presence *of this explosive* on the dump or in the muck. That is not the question here, nor the law of this case. It is sufficient if they knew, or by the exercise of ordinary care could have known of the danger of caps or exploders getting into the muck, and negligently failed to keep them out; or if Emke was ignorant of the danger, and by the exercise of ordinary care could not have discovered it, and the appellants negligently failed to warn him. As above shown, appellants admit they knew of the danger. The remaining questions of appellant's negligence in permitting them to be in the muck, and of Emke's knowledge of the danger were fairly submitted to the jury.

The verdict of the jury is not excessive, and we see from the record no prejudicial error to appellants. The judgment of the lower court is, therefore, affirmed.